IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:19CV00347 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $74,820.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate violation of the Controlled Substances Act.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or was derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state or federal law.

3. The defendant property is $74,820.00 in U.S. Currency, which was seized on November 6, 2018, in Mebane, North Carolina, while located within the jurisdiction of this Court, and has been deposited to the United States Marshals Service Seized Asset Deposit Fund.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be

granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Date: March 28, 2019

>Respectfully submitted,
>
>MATTHEW G.T. MARTIN
>United States Attorney
>
>
> /s/ Nathan L. Strup
>Nathan L. Strup, Mo. Bar No. 60287
>Assistant U.S. Attorney
>Middle District of North Carolina
>101 S. Edgeworth Street, 4th Floor
>Greensboro, NC 27401
>(336) 333-5351/nathan.strup@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Megan Coggins
Task Force Officer
Drug Enforcement Administration

# DECLARATION

I, Megan Coggins, a Task Force Officer with the Drug Enforcement Administration (DEA) in Greensboro, North Carolina, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

2. I have been employed with the Burlington Police Department (BPD) as an Investigator since June 2011, and have served as a DEA Task Force Officer since October 2017. From August 2011 to January 2018, I was assigned to Operations Division – Patrol where I conducted uniformed patrol duties as a Police Officer. In January 2015, I transferred to the Special Operations Division – Alamance Narcotics Enforcement Team (ANET) where I have performed, and continue to perform, various specialized duties and assignments related to cases involving narcotics and major drug traffickers. In April of 2017, I was promoted to Police Officer II.

3. In October of 2017, I was assigned as a federally sworn DEA Task Force Officer to the DEA Drug Interdiction Task Force in Greensboro, NC. In this role, I assist in investigating various federal narcotics cases and conduct drug interdiction activities within the Middle District of North Carolina.



GOVERNMENT EXHIBIT A

4. I possess an Associate of Arts Degree from Alamance Community College in Haw River, NC. In January 2011, I finished 516 hours of Basic Law Enforcement Training at Davidson Community College.

5. I completed the following additional formalized training and courses: Interview and Interrogation, Basic Search Warrant Writing, Police Law Institute, and Drug Enforcement for Patrol Officers. I received an intermediate training certificate. I received training from other officers in the field of detection, investigation, and identification of illegal controlled substance.

6. I have conducted numerous investigations involving violations of the North Carolina Controlled Substance Act. Many of these investigations resulted in the arrests and convictions of individuals for such violations. I participated in numerous search warrants related to illegal drug sales and possession, during which arrests were made and controlled substances were seized. I am experienced in physical surveillance, the use of wire and electronic communication interceptions, and federal search warrants. I am up to date with the methods used by drug traffickers to conceal proceeds of illegal drug transactions.

7. Through my training and experience, I am familiar with the appearance, packaging, manufacturing, sale, and distribution of controlled substances. I am also familiar with the persons, practices, and customs involved in the possession, manufacturing, sale, and delivery of controlled substances in and around Alamance County, NC.

8. This declaration is submitted in support of a Verified Complaint of Forfeiture of $74,820.00 in U.S. currency seized on November 6, 2018, from Antone Figuried, Jr. (FIGURIED).

9. The facts set forth in this Declaration are based on my own personal knowledge and experience, and information provided by other law enforcement officers.

10. Based on the facts set forth below, there is probable cause to believe the $74,820.00 in U.S. currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

11. During the month of October 2018, two Confidential and Reliable Informants (CRIs) separately stated to ANET Investigators that FIGURIED, also known as "Pretty Tone," was selling cocaine and marijuana out of his residence located at 102 Paddle Court, Mebane, NC. The CRIs each independently stated to ANET Investigators that they had purchased cocaine and marijuana from FIGURIED several times in the past from the residence and locations near the residence. The CRIs also told me and other ANET Investigators that FIGURIED was known to have a firearm with him on occasion and at his residence.

12. The CRIs have shown to be reliable in the past. They previously have provided information to ANET that was verified by numerous means. The CRIs have purchased controlled substances at the direction and under the control of members of ANET. Therefore, the information provided by the CRIs in this matter is believed to be truthful and reliable.

13. In October 2018, multiple controlled purchases of cocaine from FIGURIED were conducted utilizing a CRI. During these controlled purchases, ANET Investigators conducted physical surveillance on FIGURIED and the residence at 102 Paddle Court, Mebane, NC.

14. On Monday, November 5, 2018, a North Carolina state search warrant was issued by Superior Court Judge Paul L. Jones for FIGURIED and his residence at 102 Paddle Court, Mebane, NC.

15. ANET Investigators served the search warrant on November 6, 2018, at 6:52 a.m. Mebane Police Department Special Response Team made entry into and secured the residence. The scene was then turned over to ANET Investigators who conducted the search. FIGURIED, his juvenile son, his girlfriend, and the girlfriend's toddler-age son were present during the search.

16. ANET Inv. W. Walker utilized his police canine, K9 Shadow, to search inside the residence, off-lead, room by room. During the search, K9 Shadow gave positive alerts to the odor of illegal narcotics inside the kitchen and garage. K9 Shadow began sniffing around the kitchen cabinets, specifically under the kitchen sink. Located in the cabinet under the sink were multiple glass jars that contained suspected marijuana.

17. Inv. Walker has successfully demonstrated the ability to properly deploy and maintain a police/narcotics detection canine and has effectively used this training to locate concealed controlled substances (marijuana, heroin, methamphetamine, and cocaine) with the assistance of his canine. Inv. Walker has attended seminars and training sessions for basic and advanced police canine tactics, canine training, and animal behavior.

18. K9 Shadow is a two-year-old Dutch Shepard, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances. K9 Shadow completed a training program put on by the BPD where Inv. Walker and K9 Shadow were trained by Master Trainer Officer Jason Comer. K9 Shadow is trained to detect the presence of the odor of narcotics, including marijuana, heroin, methamphetamine, and cocaine. K9 Shadow has proven reliable in using olfactory senses to locate narcotic training aids of actual controlled substances listed above. K9 Shadow has reliably detected a variety of amounts of narcotics concealed inside automobiles and elsewhere since being placed into service. Inv. Walker and K9 Shadow were certified by the International Police Dog Work Association on March 28, 2018.

19. During the search, ANET Inv. J. Hall, who is the primary Investigator for the investigation, located a white paper bag on the kitchen counter near the sink containing a large amount of U.S. currency in seven banded stacks. ANET Lt. C.W. Smith located another package of banded U.S. currency in the dining room on chinaware. Based upon my experience and training, banded currency is consistent with proceeds of illegal drug transactions.

20. During the search, ANET Investigators interviewed FIGURIED. FIGURIED stated that the U.S. currency belongs to him, and that he earned the money by making music videos. FIGURIED produced no receipts showing how he obtained the U.S. currency. Investigators asked FIGURIED his employment status. In response, FIGURIED stated that he was a musician. FIGURIED produced no employment paperwork.

FIGURIED also stated that he "should not have fucked with that shit", which Investigators understand as a reference to FIGURIED's involvement with illegal drugs.

21. During the interview, FIGURIED also stated he did not pay rent and that his grandmother, who owns the property, does not live at the residence.

22. During the search, Sgt. Payne interviewed FIGURIED's girlfriend and asked her whether she knew anything about the money. In response, the girlfriend stated that she did not. She further stated that if she knew about the money, that she would have been shopping. FIGURIED's girlfriend was not charged or arrested in connection with the investigation.

23. During the search, ANET Inv. T. Pringle seized the U.S. currency as drug proceeds, and also seized the following items that were located in the residence: 2 Samsung cellular phones, 3 plastic baggies, 5 one gram Exotic Carts (a concentrated cannabis product), 6 glass smoking devices, 1 marijuana joint weighing 0.1 grams, 33.3 grams of marijuana, 32.9 grams of marijuana "DAB" (a concentrated cannabis product), 99.1 grams of marijuana, 1 digital scale, 1 Ziploc sealer, and 1 Night Owl Security 8 channel High Definition Video DVR. Inv. T. Pringle then placed all of the evidence in the appropriate evidence bags, which he later submitted to BPD Evidence.

24. After the search was concluded, FIGURIED was arrested and charged with simple possession of marijuana and possession of drug paraphernalia. FIGURIED was incarcerated at the Alamance County Jail where he made bond and was released on the same date (November 6, 2018).

25. After the search of the residence and on the same day (November 6, 2018), ANET Inv. Walker utilized K9 Shadow to conduct a "blind search" of the U.S. currency at BPD. Four brown bags were separated approximately 10 feet apart. K9 Shadow alerted to the odor of an illegal narcotic only in the two bags containing the U.S. currency from the seizure described above.

26. FIGURIED's prior criminal drug history includes the following convictions: Possession With Intent to Manufacture, Sell, and Distribute MDMA (2009); and Possession of Marijuana (2012 and 2015).

27. I assisted with the adoption of the U.S. currency through DEA. ANET Lt. C.W. Smith, Evidence Supervisor D. Jones, and I transported the seized U.S. currency to a Wells Fargo Bank in Burlington, where it was counted and determined to be $74,820.00 in U.S. currency, and deposited per BPD policies and procedures.

28. A City of Burlington Official Check (check number 161701) dated November 15, 2018, in the amount of $74,820.00, was transferred to me on November 16, 2018, as witnessed by DEA Special Agent Jones. The check was then sent via FedEx to the United States Marshals Service in Raleigh, NC, where it was deposited into the Seized Asset Deposit Fund.

29. DEA adopted the seizure of $74,820.00 in U.S. Currency and began administrative forfeiture proceedings. On December 28, 2018, FIGURIED filed an administrative claim to the defendant currency through his attorney, Jonathan Trapp. The administrative forfeiture process was terminated, and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

## Conclusion

30. Based upon the foregoing, there is probable cause to believe that the $74,820.00 in U.S. Currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to the exchange of a controlled substance, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This 26 day of March, 2019.

Megan Coggins
Task Force Officer
Drug Enforcement Administration